**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| TINA BARONI, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>MARQUIS SOFTWARE SOLUTIONS, INC.,<br><br>Defendant. | Case No. 4:25-cv-1359<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Tina Baroni ("Plaintiff"), by and through her attorneys, hereby brings this Class Action individually and on behalf of all others similarly situated (collectively, "Class members"), against Defendant Marquis Software Solutions ("Defendant"). Plaintiff complains and alleges the following upon personal knowledge as to herself and upon information and belief as to all other matters.

## INTRODUCTION

1. This is a data breach class action against Defendant for its failure to adequately secure and safeguard confidential and sensitive information of Plaintiff and the Class held through the typical course of business.

2. Plaintiff and the proposed Class members bring this class action lawsuit on behalf of all persons who entrusted Defendant with sensitive Personally Identifiable Information ("PII"), including names, addresses, phone numbers, Social Security numbers ("SSNs"), Taxpayer Identification Numbers, financial account information, and dates of birth, that was impacted in a data breach that Defendant publicly disclosed on or about November 20, 2025 (the "Data Breach" or the "Breach").

3. Defendant Marquis Software Solutions, Inc., is a digital and physical marketing and communications vendor that provides services to over 700 banks and credit unions nationwide.[1]

4. Defendant provides marketing and communications services to First National Bank of Pennsylvania.

5. Plaintiff Tina Baroni is a customer of First National Bank of Pennsylvania.

6. Defendant acquired Plaintiff's PII through its business relationship with First National Bank of Pennsylvania.

7. On August 14, 2025, Defendant detected suspicious activity on its network and determined that it was the victim of a ransomware attack. In response, Defendant engaged third-party cybersecurity experts to determine the nature and scope of the Data Breach.[2]

8. Defendant's investigation revealed that an unauthorized third party accessed its network through its SonicWall firewall on August 14, 2025, and acquired certain files from its systems that contained individuals' personal data.[3]

9. The information exposed or otherwise accessed by an unauthorized third party in the Data Breach included Plaintiff's and Class members' names, addresses, phone numbers, Social Security numbers, Taxpayer Identification Numbers, financial account information, and dates of birth.[4]

10. Between October 27, 2025, and November 25, 2025, Defendant notified its affected

---

[1] *About Us*, Marquis Software Solutions, https://gomarquis.com/who-we-are/about-us (last visited Dec. 7, 2025).

[2] *Data Breach Notification: Marquis Software Solutions (on behalf of business customer data owners)*, Office of the Maine Attorney General (Dec. 2, 2025), https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/d8efd2f6-f52d-49d3-be53-028e9a8cb837.html.

[3] *Id.*

[4] *Id.*

bank and credit union clients.

11. On or about November 20, 2025, Defendant made a public disclosure about the Data Breach and began sending out notice letters to individuals impacted.[5]

12. Defendant failed to take precautions designed to keep individuals' PII secure.

13. Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on its affirmative representations to Plaintiff and the Class, to keep their PII confidential, safe, secure, and protected from unauthorized disclosure or access.

14. Plaintiff and the Class have taken reasonable steps to maintain the confidentiality and security of their PII.

15. Plaintiff and the Class reasonably expected Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

16. Defendant, however, breached its numerous duties and obligations by failing to implement and maintain reasonable safeguards; failing to comply with industry-standard data security practices and laws and regulations governing data security; failing to properly train its employees on data security measures and protocols; failing to timely recognize and detect unauthorized third parties accessing its system and that substantial amounts of data had been compromised; and failing to timely notify the impacted Class.

17. In this day and age of regular and consistent data security attacks and data breaches, and given the sensitivity of the data entrusted to Defendant, this Data Breach is particularly egregious and foreseeable.

---

[5] *Data Breach Notification: Marquis (breach of NSB data)*, Office of the Maine Attorney General (Nov 20, 2025), https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/2eb0a98c-c8e9-4d35-bc72-c4e68f5eebb9.html.

18. By implementing and maintaining reasonable safeguards and complying with standard data security practices, Defendant could have prevented this Data Breach.

19. Plaintiff and the Class are now faced with a present and imminent lifetime risk of identity theft or fraud. These risks are made even more substantial and significant because of the inclusion of their SSN and other static PII.

20. PII holds significant value to cybercriminals, particularly Social Security numbers. As a direct result of Defendant's Data Breach, Plaintiff's and the Class's PII has been exposed to cybercriminals and may already be offered for sale on the dark web, where it can be accessed and exploited to the detriment of Plaintiff and the Class. Plaintiff and the Class face a current and lifetime risk of identity theft or fraud as a direct result of the Data Breach.

21. Defendant acknowledges the imminent threat the Data Breach has caused to Plaintiff.

22. The modern cyber-criminal can use the PII and other information stolen in cyber-attacks to assume a victim's identity when carrying out various crimes such as:

(i) obtaining and using a victim's credit history;

(ii) making financial transactions on their behalf and without their knowledge or consent, including opening credit accounts in their name or taking out loans;

(iii) impersonating them in written communications, including mail, e-mail and/or text messaging;

(iv) stealing, applying for and/or using benefits intended for the victim; and

(v) committing illegal acts while impersonating their victim which, in turn, could incriminate the victim and lead to other legal ramifications.

23. Plaintiff's and Class members' PII was compromised due to Defendant's negligent

and/or careless acts and omissions and the failure to protect Plaintiff's and Class members' PII.

24. As a result of Defendant's delayed response to the data breach, Plaintiff and the Class had no idea their PII had been compromised, and that they were, and continue to be, at significant and imminent risk of identity theft, fraud and various other forms of personal, social and financial harm. The risk will remain for their respective lifetimes because of Defendant's negligence.

25. Plaintiff brings this action on behalf of all persons whose PII was compromised in the Data Breach as a direct consequence for Defendant's failure to:

(i) adequately protect individuals' PII entrusted to it;

(ii) warn individuals of its inadequate information security practices; and

(iii) effectively monitor its websites and platforms for security vulnerabilities and incidents.

26. Defendant's conduct amounts to negligence and violates state and federal statutes and guidelines.

27. As a result of the Data Breach, Plaintiff and the Class suffered ascertainable losses, including but not limited to, a loss of privacy. These injuries include:

(i) the invasion of privacy;

(ii) the compromise, disclosure, theft, and imminent unauthorized use of Plaintiff's and the Class's PII;

(iii) emotional distress, fear, anxiety, nuisance and annoyance related to the theft and compromise of their PII;

(iv) lost or diminished inherent value of PII;

(v) out-of-pocket expenses associated with the prevention, detection, and recovery

from identity theft, tax fraud, and/or unauthorized use of their PII;

(vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time or wages; and

(vii) the continued and increased risk to their PII, which remains available on the dark web for individuals to access and abuse and remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of Plaintiff and the Class.

28. Plaintiff seeks to remedy these harms and prevent any future data compromise on behalf of herself and all similarly situated persons whose PII was compromised and stolen as a result of the Data Breach and remains at risk due to inadequate data security practices employed by Defendant.

29. Plaintiff, on behalf of herself and all other Class members whose PII was exposed in the Data Breach, asserts claims for negligence, negligence *per se*, breach of fiduciary duty, breach of contract, unjust enrichment, and invasion of privacy, and seeks declaratory relief, injunctive relief, monetary damages, statutory damages, punitive damages, equitable relief, and all other relief authorized by law.

## PARTIES

30. Plaintiff Tina Baroni is a natural person and citizen of Pennsylvania.

31. Defendant Marquis Software Solutions, Inc., is a corporation with its principal place of business located at 6509 Windcrest Drive, Suite 170, Plano, Texas 75024 in the Sherman Division of the Eastern District of Texas. The registered agent for service of process is C.T.

Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. Defendant is a citizen of Texas.

**JURISDICTION AND VENUE**

32. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), and the amount in controversy exceeds the $5,000,000 jurisdictional minimum of the Class Action Fairness Act, exclusive of interest and costs, and there are numerous Class members who are citizens of states other than Defendant's states of citizenship.

33. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this jurisdiction, regularly conducts business in this jurisdiction, and the acts and omissions giving rise to Plaintiff's claims emanated from within this jurisdiction.

34. Venue is proper in this jurisdiction because Defendant's principal place of business is in this County and the acts and omissions giving rise to Plaintiff's claims emanated from within this jurisdiction.

**FACTUAL ALLEGATIONS**

***Defendant Stores Consumer PII***

35. Defendant Marquis Software Solutions, Inc., is a digital and physical marketing and communications vendor serving over 700 banks and credit unions nationwide.[6]

36. Through business transactions with its banks and credit union clients, Defendant acquires the PII of these banks' and credit unions' customers.

37. Upon information and belief, the type of information that Defendant maintains includes names, addresses, phone numbers, Social Security numbers, Taxpayer Identification Numbers, financial account information, and dates of birth.

---

[6] Marquis Software Solutions, *supra* note 1.

38. Defendant's applicable privacy policy demonstrates that it is aware of its legal obligations to keep PII confidential and secure and indeed promises to do just that. Although Defendant has since updated its privacy policy, the policy in place at the time of the Data Breach stated, among other representations: "We use commercially reasonable and appropriate safeguards, including the encryption of personal information, to secure and protect the privacy, accuracy, and reliability of your information and to protect it from unauthorized access, alteration, disclosure, or destruction."[7]

39. Despite Defendant's representations about the privacy of consumers' information, it did not employ reasonable security measures to protect consumers' PII from unauthorized disclosure, as demonstrated throughout this Complaint.

40. Due to the highly sensitive nature of the information Defendant collects and maintains, Defendant is obligated to provide confidentiality and adequate security through its applicable privacy policy, and otherwise in compliance with statutory privacy requirements.

41. Plaintiff and the Class members provided their PII to their banks and credit unions, who then provided their PII to Defendant.

42. Plaintiff and Class members relied on Defendant to keep their sensitive PII confidential and secure, to use such information for business purposes only, and to make only authorized disclosures of this information.

***The Data Breach***

43. On August 14, 2025, Defendant detected suspicious activity on its network and determined that it was the victim of a ransomware attack. In response, Defendant engaged third-

[7] *Privacy Policy*, Marquis Software Solutions (Sept. 16, 2020), available at https://web.archive.org/web/20250616023923/https://gomarquis.com/privacy-policy.

party cybersecurity experts to determine the nature and scope of the Data Breach.[8]

44. Defendant's investigation revealed that an unauthorized third party accessed its network through its SonicWall firewall on August 14, 2025, and acquired certain files from its systems that contained individuals' personal data.[9]

45. The information exposed or otherwise accessed by an unauthorized third party in the Data Breach included Plaintiff's and Class members' names, addresses, phone numbers, Social Security numbers, Taxpayer Identification Numbers, financial account information, and dates of birth.[10]

46. Between October 27, 2025, and November 25, 2025, Defendant notified its affected bank and credit union clients about the Data Breach.

47. On or about November 20, 2025, Defendant made a public disclosure about the Data Breach and began sending out notice letters to individuals impacted.[11]

48. Defendant's failure to notify Plaintiff and Class members that their PII was compromised until several months after the Data Breach occurred placed them at a higher risk that their information will be used towards illegal means since their information was vulnerable without their knowledge. Due to the delay in announcing the Data Breach to consumers, Plaintiff and Class members were unable to take affirmative steps to mitigate their risks of fraud and/or identity theft from the unauthorized disclosure of their PII.

49. Defendant failed to take action to prevent the Data Breach by implementing data security measures to protect its network from unauthorized breach and thereby failed to protect its patients' PII.

[8] Office of the Maine Attorney General, *supra* note 2.
[9] *Id.*
[10] *Id.*
[11] Office of the Maine Attorney General, *supra* note 5.

50. Defendant further failed to timely detect the Data Breach until information was already accessed.

51. Upon information and belief, the cyberattack was targeted at Defendant due to its status as a third-party vendor to financial institutions that collects, creates, and maintains PII on its computer network and/or systems.

52. Plaintiff and Class members' PII was compromised and acquired in the Data Breach.

53. Plaintiff further believes that their PII will continue to be available for purchase on the dark web, which is the *modus operandi* of cybercriminals.

54. Plaintiff and Class members now face a heightened and continued threat of identity theft and other types of criminal mischief resulting from the Data Breach.

55. The long-lasting effects of the Data Breach are particularly worrisome since it affects the current and former customers of financial institutions nationwide. These consumers must now live the remainder of their lives under a threat that Defendant could have prevented.

***Defendant Knew that PII is Valuable to Cybercriminals and Failed to Take Action to Prevent its Theft***

56. At all relevant times, Defendant knew, or should have known, that Plaintiff and class members' PII was a target for cybercriminals. Despite such knowledge, Defendant failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiff and class members' PII from cyberattacks.

57. By acquiring, collecting, and using Plaintiff and class members' PII, Defendant assumed legal and equitable duties created the Federal Trade Commission Act, industry standards, contract, and statutory and common law to keep Plaintiff and class members' PII confidential, and

to protect it from unauthorized access and disclosure.

58. Defendant certainly knew and understood that unprotected or exposed PII in its possession is valuable and highly sought after by criminals seeking to illegally monetize that PII through unauthorized access.

59. Indeed, personal data such as PII is a valuable property right, leading to the purchase of said data by American companies. American companies spent over $19 billion on acquiring personal data of consumers in 2018.[12]

60. Consumers place a high value on the privacy of their data. Studies confirmed that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[13] Recently, more consumers are exercising their Data Subject Access Rights and leaving providers over their data practices and policies.[14]

61. PII is also of high value to identity thieves, as evidenced by their practice of trading such private information on the black market or "dark web." PII is a measurable commodity on the black market.[15]

62. Companies like Defendant are aware that consumers value the privacy of their sensitive data such as PII and that cybercriminals continue to successfully target that data to obtain

---

[12] *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, INTERACTIVE ADVERTISING BUREAU (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

[13] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011), available for download at: https://www.jstor.org/stable/23015560?seq=1.

[14] CISCO, *Cisco 2023 Consumer Privacy Survey* (April 2023), available at https://www.cisco.com/c/en/us/about/trust-center/consumer-privacy-survey.html?CCID=cc000742.

[15] *See, e.g.*, Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE (Apr. 28, 2014), http://www.medscape.com/viewarticle/824192.

significant profits. As such, companies like Defendant remain on high alert and must act in accordance with their legal and equitable obligations to implement reasonable security measures to prevent targeted data attacks aimed at their patients' PII.

63. Armed with this knowledge, Defendant breached its duties by failing to implement and maintain reasonable security measures to protect Plaintiff and Class members' PII from being stolen.

***Theft of PII Has Grave and Lasting Consequences for Victims***

64. Identity thieves use PII for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud. According to Experian, one of the largest credit reporting companies in the world, identity theft can happen in many ways: fraudsters can obtain and sell personal data to other criminals, or use personal data to open a new credit card or loan, open a bank account and write bad checks, apply for government benefits, take over existing debit and credit accounts, withdraw funds, and even get medical procedures.[16]

65. The Federal Trade Commission ("FTC") also warns consumers about the type of fraud that identity thieves use PII to achieve.[17] Criminals can obtain a driver's license or official identification card in the victim's name but with the thief's picture, use the victim's name and SSN to obtain government benefits, or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during

---

[16] Louis DeNicola, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself?*, EXPERIAN (Apr. 8, 2025), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

[17] *See What to Know About Identity Theft*, FEDERAL TRADE COMMISSION CONSUMER ADVICE, https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last visited Dec. 7, 2025).

an arrest, resulting in an arrest warrant being issued in the victim's name.[18]

66. Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a week to resolve issues stemming from identity theft and some need months to a year.[19]

67. Theft of SSNs also creates a particularly alarming situation for victims because SSNs cannot easily be replaced. To obtain a new number, a breach victim must demonstrate ongoing harm from misuse of her SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

68. Further complicating victims' ability to defend selves from identity theft is the time lag between when PII is stolen, when it is used, and when a person discovers it has been used. On average, it takes approximately three months for consumers to discover their identity has been stolen and used, and it takes some individuals up to three years to learn that information.[20]

69. Plaintiff and Class members now live with their PII exposed in cyberspace and available to people willing to purchase and use the information for any number of improper purposes and crimes.

70. Plaintiff and Class members face constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and Class members are incurring and will continue to incur such damages, in addition to any fraudulent use of their PII.

---

[18] *See Warning Signs of Identity Theft*, FEDERAL TRADE COMMISSION, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last visited Dec. 7, 2025).

[19] *2023 Consumer Impact Report*, Identity Theft Resource Center, available at https://www.idtheftcenter.org/wp-content/uploads/2023/08/ITRC_2023-Consumer-Impact-Report_Final-1.pdf.

[20] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 JOURNAL OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9 (2019), available at http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf

***Defendant Failed to Comply with Statutory Regulations***

71. The Federal Trade Commission Act ("FTCA") prohibits Defendant from engaging in "unfair or deceptive acts or practices in or affecting commerce." *See* 15 U.S.C. § 45.

72. The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses that reflect the importance of implementing reasonable data security practices.

73. The FTC's publication, *Protecting Personal Information*, established cyber-security guidelines for businesses. The guidelines provide that businesses should take action to protect the personal information that they collect; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their networks' vulnerabilities; and implement policies to correct any security problems.[21]

74. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[22]

75. The FTC further recommends that businesses not maintain private information longer than is needed for authorization of a transaction; limit access to sensitive information; require complex passwords be used on networks; use industry-tested methods for security monitor for suspicious activity on the networks; and verify that third-party service providers have implemented reasonable security measures.

76. The FTC has the authority to bring enforcement actions against businesses for failing to protect PII adequately and reasonably under Section 5 of the FTCA, 15 U.S.C. § 45.

[21] *Protecting Personal Information: A Guide for Business, Federal Trade Commission* (2016), available at https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business.
[22] *Id.*

77. The orders that result from enforcement actions further clarify the measures businesses must take to meet their data security obligations.

78. Defendant failed to properly implement basic data security practices.

79. Defendant was at all relevant times fully aware of its obligations to protect consumers' PII, and of the significant consequences that would result from its failure to do so.

80. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

81. Consequently, cybercriminals circumvented Defendant's lax security measures, resulting in the Data Breach.

***Defendant Failed to Comply with Industry Standards***

82. Industry standards for companies such as Defendant exist because of the high threat of cyberattacks that target the sensitive information that they collect and maintain.

83. These practices include, but are not limited to: educating and training employees about the risks of cyberattacks; creating strong passwords; implementing multi-layer security such as firewalls, anti-virus and malware software, encryption, and multi-factor authentication; backing up data; limiting employee access to sensitive data; setting up network firewalls; monitoring and limiting network ports; and monitoring and limited access to physical security systems.

84. Defendant failed to meet the minimum standards of any of the following: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity

readiness.

85. Defendant's failure to implement the industry standards described herein resulted in the Data Breach and caused injury to Plaintiff and Class members.

***Common Damages Sustained by Plaintiff and Class Members***

86. For the reasons mentioned above, Plaintiff and all other Class members have suffered injury and damages directly attributable to Defendant's failure to implement and maintain adequate security measures, including, but not limited to: (i) a substantially increased risk of identity theft, justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) invasion of their privacy; (v) deprivation of the value of their PII, for which there is a well-established national and international market; and/or (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft they face and will continue to face.

***Plaintiff Tina Baroni Experience***

87. Plaintiff Tina Baroni resides in Pennsylvania.

88. Plaintiff is a customer of First National Bank of Pennsylvania.

89. Defendant provides marketing and communication services to First National Bank of Pennsylvania.

90. Through its business transactions with First National Bank of Pennsylvania, Defendant obtained Plaintiff's PII.

91. On November 25, 2025, Plaintiff received a notice letter from Defendant informing her that an unauthorized actor acquired files containing, at least, her name and Social Security number.

92. Since the announcement of the Data Breach, Plaintiff has been required to spend valuable time monitoring her various accounts in an effort to detect and prevent any misuses of her PII, time she would not have had to spend but for the Data Breach.

93. As a result of the Data Breach, Plaintiff suffered actual injury including, but not limited to: (i) a substantially increased risk of identity theft; (ii) improper disclosure of her PII; (iii) breach of the confidentiality of her PII; (iv) invasion of her privacy; (v) deprivation of the value of her PII, for which there is a well-established national and international market; and/or (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft she faces and will continue to face.

94. The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, which is amplified by the fact that key details about the Data Breach are still unknown, and Plaintiff's PII is still at risk of being stolen and used for fraudulent activity.

## CLASS ALLEGATIONS

95. Plaintiff brings this class action individually and on behalf of all persons similarly situated, pursuant to 28 U.S.C. § 1332(d).

96. Plaintiff seeks certification of a Nationwide Class as defined below and subject to further amendment:

> All individuals in the United States whose PII was compromised in the Data Breach (the "Class").

97. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, officers, agents, and directors, as well as the judge(s) presiding over this matter and the clerks of said judge(s).

98. Certification of Plaintiff's claims for class-wide treatment is appropriate because

Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

99. Numerosity. The members in the Class are so numerous that joinder of all Class members in a single proceeding would be impracticable. While the exact number of those affected by the Data Breach remains unknown, the Class size and the affected individuals' contact information is available from Defendant's business records.

100. Commonality. Common questions of law and fact exist as to all Class members and predominate over any potential questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

a. Whether Defendant had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff and Class members' PII from unauthorized access and disclosure;

b. Whether Defendant failed to exercise reasonable care to secure and safeguard Plaintiff and Class members' PII;

c. Whether Defendant breached its duties to protect Plaintiff and Class members' PII;

d. Whether Defendant breached its fiduciary duty to Plaintiff and Class members;

e. Whether Defendant knew or should have known that its data security systems and monitoring procedures were deficient;

f. Whether hackers obtained Plaintiff and Class members' data in the Data Breach;

g. Whether an implied contract existed between Class members and Defendant providing that Defendant would implement and maintain reasonable security measures to protect and secure Class members' PII from unauthorized access and disclosure;

h. Whether Defendant invaded Plaintiff and Class members' privacy;

i. Whether Defendant was unjustly enriched;

j. Whether Plaintiff and Class members are entitled to injunctive relief and identity theft protection to redress the imminent harm they face due to the Data Breach; and

k. Whether Plaintiff and all other members of the Class are entitled to damages and the measure of such damages and relief.

101. Typicality. Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had her PII compromised in the Data Breach. Plaintiff and Class members were injured by the same wrongful acts, practices, and omissions committed by Defendant, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class members.

102. Adequacy of Representation. Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff is an adequate representative of the Class in that she has no interests adverse to, or that conflict with, the Class she seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

103. Superiority. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and all other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress from Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not.

Individualized litigation creates potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

104. All members of the proposed Class are readily ascertainable. Defendant has access to the names, addresses, and/or email addresses of Class members affected by the Data Breach.

105. Finally, class certification is appropriate. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff on behalf of themselves and all other Class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

## CAUSES OF ACTION

## COUNT I
## NEGLIGENCE
## (On behalf of Plaintiff and the Class)

106. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

107. Defendant acquires consumers' PII through its business transactions with the financial institutions it serves.

108. Defendant collected, acquired, and stored Plaintiff and class members' PII.

109. Plaintiff and Class members entrusted Defendant with their private information and had the understanding that Defendant would safeguard their information.

110. Defendant had knowledge of the sensitivity of Plaintiff and class members' private information, and the consequences that would result from the unauthorized disclosure of such information. Defendant knew that financial institutions and their third-party vendors were the target of cyberattacks in the past, and that Plaintiff and Class members were the

foreseeable and probable victims of any inadequate data security procedures.

111. It was therefore reasonably foreseeable that the failure to implement adequate data security procedures would result in injuries to Plaintiff and Class members.

112. Defendant owed a duty to Plaintiff and Class members to exercise reasonable care in safeguarding and protecting their private information in its possession, custody, or control from the unauthorized disclosure of such information. Defendant also owed a duty to Plaintiff and Class members to notify them within a reasonable time of any breach to the security of their sensitive and private information.

113. Defendant's duty to exercise reasonable care arises from several sources, including but not limited to common law, the FTCA, industry standards, and other statutory law.

114. Defendant breached its duty by failing to exercise reasonable care in safeguarding and protecting Plaintiff and class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII entrusted to it—including Plaintiff and class members' PII.

115. Defendant admitted that it was a victim of a ransomware attack, potentially exposing the PII of Plaintiff and Class members to unauthorized third persons as a result of the Data Breach and leaving them susceptible to fraud.

116. Defendant's negligent conduct or breach of the above-described duties owed to Plaintiff and Class members caused their PII to be compromised in the Data Breach.

117. Plaintiff and Class members were in no position to protect their PII themselves.

118. But for Defendant's breach of the duties described herein, Plaintiff and Class members' PII would not have been compromised.

119. There is a causal relationship between Defendant's failure to implement, control,

direct, oversee, manage, monitor, and audit adequate data security procedures to protect consumers' PII and the harm suffered by Plaintiff and Class members.

120. Defendant's conduct caused the Data Breach, and as a direct and proximate result, Plaintiff and all other Class members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, *inter alia*: (i) substantially increased risk of identity theft, justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) actual identity theft; (iii) improper disclosure of their PII; (iv) breach of the confidentiality of their PII; (v) deprivation of the value of their PII, for which there is a well-established national and international market; and/or (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face.

121. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and Class members have suffered and will continue to suffer other forms of injury, including but not limited to, anxiety, emotional distress, invasion of privacy, and other economic and non-economic losses.

122. Plaintiff and Class members are entitled to damages incurred as a result of the Data Breach.

123. Defendant's negligent conduct is ongoing, in that it still holds Plaintiff and class members' PII in an unsafe and nonsecure manner.

124. Plaintiff and Class members are also entitled to injunctive relief in the form of requiring Defendant to strengthen its data security procedures and to provide credit monitoring to Class Members.

**COUNT II**
**NEGLIGENCE PER SE**
**(On behalf of Plaintiff and the Class)**

125. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

126. Defendant's duties arise from Section 5 of the FTCA, 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by a business, such as Defendant, of failing to employ reasonable measures to protect and secure PII.

127. Defendant violated Section 5 of the FTCA by failing to use reasonable measures to protect Plaintiff and class members' PII and not complying with applicable industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtains and stores, and the foreseeable consequences of a data breach involving PII including, specifically, the substantial damages that would result to Plaintiff and the other Class members.

128. Defendant's violations of Section 5 of the FTCA constitute negligence *per se*.

129. Plaintiff and Class members are within the class of persons that Section 5 of the FTCA was intended to protect.

130. The harm occurring as a result of the Data Breach is the type of harm Section 5 of the FTCA was intended to guard against.

131. It was reasonably foreseeable to Defendant that its failure to exercise reasonable care in safeguarding and protecting Plaintiff and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the release, disclosure, and dissemination of Plaintiff and class members' PII to unauthorized individuals.

132. The injury and harm that Plaintiff and the other Class members suffered was the direct and proximate result of Defendant's violations of Section 5 of the FTCA. Plaintiff and Class members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft, justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) actual identity theft; (iii) improper disclosure of their PII; (iv) breach of the confidentiality of their PII; (v) deprivation of the value of their PII, for which there is a well-established national and international market; and/or (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face.

133. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and Class members have suffered and will continue to suffer other forms of injury, including but not limited to, anxiety, emotional distress, invasion of privacy, and other economic and non-economic losses.

134. Plaintiff and Class members are entitled to damages incurred as a result of the Data Breach.

135. Plaintiff and Class members are also entitled to injunctive relief in the form of requiring Defendant to strengthen its data security procedures and to provide credit monitoring to Class members.

## COUNT III
## BREACH OF THIRD PARTY BENEFICIARY CONTRACT
## (On behalf of Plaintiff and the Class)

136. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

137. Defendant entered into contracts, written or implied, with its Clients to perform services. Upon information and belief, these contracts are virtually identical between and among Defendant and its Clients around the country whose customers, including Plaintiff and Class Members, were affected by the Data Breach.

138. In exchange, Defendant agreed, in part, to implement adequate security measures to safeguard the Private Information of Plaintiff and the Class.

139. These contracts were made expressly for the benefit of Plaintiffs and the Class, as Plaintiff and Class Members were the intended third-party beneficiaries of the contracts entered into between Defendant and its Clients. Defendant knew that if it were to breach these contracts with its Clients, its Clients' customers—Plaintiff and Class Members—would be harmed.

140. Defendant breached the contracts it entered into with its Clients by, among other things, failing to (i) use reasonable data security measures, (ii) implement adequate protocols and employee training sufficient to protect Plaintiffs Private Information from unauthorized disclosure to third parties, and (iii) promptly and adequately detecting the Data Breach and notifying Plaintiff and Class Members thereof.

141. Plaintiff and the Class were harmed by Defendant's breach of its contracts with its clients, as such breach is alleged herein, and are entitled to the losses and damages they have sustained as a direct and proximate result thereof.

142. Plaintiff and Class members are also entitled to their costs and attorney's fees incurred in this action.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Class)**

143. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

144. This count is pleaded in the alternative to Plaintiff's breach of contract claim (Count IV).

145. Plaintiff and Class members conferred a monetary benefit upon Defendant in the form of their sensitive and private information.

146. In exchange, Plaintiff and Class members should have received from Defendant the benefit of the services it provided to its financial institution clients and should have had their private information protected with adequate data security procedures.

147. Defendant accepted or had knowledge of the benefits conferred upon it by Plaintiff and Class members by acquiring and/or collecting their private information. Defendant appreciated and benefitted from the receipt of Plaintiff and class members' private information in that it used the private information and profited from the healthcare transactions in furtherance of its business.

148. Defendant acquired Plaintiff and class members' private information through inequitable means in that it failed to disclose the inadequate data security procedures previously alleged herein.

149. Defendant should not be permitted to retain the PII belonging to Plaintiff and Class members because Defendant failed to adequately implement the data privacy and security procedures for itself at the expense of Plaintiff and class members' safety and that were otherwise mandated by federal, state, and local laws and industry standards.

150. Defendant unjustly enriched itself by using the private information acquired from Plaintiff and Class members to further its business.

151. Notably, Defendant chose not to use any payments to enhance their data security procedures.

152. Had Plaintiff and Class members known of Defendant's inadequate security measures, they would not have provided their PII to Defendant to collect and maintain.

153. Under principles of equity and good conscience, Defendant should not be permitted to retain the money wrongfully obtained from Plaintiff and Class members and should be compelled to provide for the benefit of Plaintiff and Class members all unlawful proceeds received by it as a result of the conduct and Data Breach alleged herein.

154. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and Class members have suffered and will continue to suffer other forms of injury, including but not limited to, anxiety, emotional distress, invasion of privacy, and other economic and non-economic losses.

155. Plaintiff and Class members are entitled to equitable relief as a result of the Data Breach.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

A. Certifying the Class as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's counsel as Class Counsel;

B. Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

C. Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of herself and the Class, seeks appropriate injunctive relief designed to prevent Defendant from experiencing another data breach by adopting and implementing best data security practices to safeguard PII and to provide or extend credit monitoring services and similar services to protect against all types of identity theft and medical identity theft;

D. Awarding Plaintiff and the Class pre-judgment and post-judgment interest to

the maximum extent allowable;

E. Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F. Awarding Plaintiff and the Class such other favorable relief as allowable under law.

**JURY TRIAL DEMANDED**

Plaintiff demand a trial by jury of all claims in this Class Action Complaint so triable.

Dated: December 8, 2025

Respectfully submitted,

By: *<u>/s/Leigh S. Montgomery</u>*
Leigh S. Montgomery
Texas Bar No. 24052214
lmontgomery@eksm.com
**ELLZEY KHERKHER SANFORD MONTGOMERY, LLP**
4200 Montrose Blvd., Suite 200
Houston, Texas 77006
Phone: (888) 350-3931
Service only: service@eksm.com

Beena M. McDonald*
Alex M. Kashurba*
Holly E. Jones*
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
One Haverford Centre
361 Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
bmm@chimicles.com
amk@chimicles.com
hej@chimicles.com
**pro hac vice* to be submitted

*Counsel for Plaintiff and the Proposed Class*